UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR A FRAUD INVESTIGATION | ) ) ) ) ) ) ) ) | ML No:  24-2069 |

*Reference:*    DOJ Ref. # CRM-182-91020

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Michael E. Eaton, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from the Republic of Serbia (Serbia).  In support of this application, the United States asserts:

RELEVANT FACTS

1. The Ministry of Justice of Serbia submitted a request for assistance (the Request) to the United States, pursuant to pursuant to the principles of comity and reciprocity, and to the extent applicable, the U.N. Convention Against Corruption, Dec. 9, 2003, S. Treaty Doc. No. 109-6, 2349 U.N.T.S. 41. (the Convention).

2. As stated in the Request, the Higher Public Prosecutor's Office in Belgrade, Special Department for Suppression of Corruption, is prosecuting Miloš Pavlović (Pavlović) for

fraud, which occurred between approximately January and July 2022, in violation of the criminal law of Serbia, specifically, Article 223, para. 3, in conjunction with Article 61 of the Serbian Criminal Code.  Under the Convention, the United States is obligated to assist in response to the Request.

3.      According to Serbian authorities, between approximately January and July 2022, Serbian citizen Miloš Pavlović acted as the legal representative and owner of Foxprom d.o.o. Beograd (Foxprom) in Belgrade, Serbia.  In early 2022, representatives of a Serbian company (the victim company) placed an order with Foxprom for 280.5 tons of linear low-density polyethylene.  Pavlović represented that Foxprom, through Company #1, a U.S. company owned by Pavlović, placed an order for 280.5 tons of polyethylene from Montachem International, Inc. (Montachem), a company located in the United States.  Pavlović then presented false documents to the victim company to indicate that the goods had been purchased, were being shipped on a vessel, and that they would be available at the port of Rijeka, Croatia on a certain date and time.

4.      Specifically, Pavlović informed the victim company that Foxprom engaged Company #1 in Florida, where Pavlović is listed as the Chief Executive Officer, to place an order for 280.5 tons of linear low-density polyethylene from Montachem on behalf of the victim company.  Serbian authorities believe that Pavlović did not actually attempt to complete the victim company's order and instead he went to great lengths to support his deception.  The victim company paid Foxprom in multiple installments based on invoices issued by Foxprom a total of Serbian Dinars (RSD) 25,445,520 (approximately USD 216,914).  Pavlović falsely indicated that the goods were purchased by providing to the victim company a forged payment document, indicating the shipping number of the vessel that transported the goods along with information about the freight forwarder who would provide the goods to the victim company

upon the vessel's arrival at the port of Rijeka. Pavlović also provided correspondence with the purported freight forwarder, all with the purpose of presenting to the victim company that there were genuine business transactions. After the victim company made its final payment, Pavlović ceased contact with the victims and transferred the money from the payments. Analysis of Foxprom's and Pavlović's accounts at a Serbian bank revealed that shortly after receiving the final payment from the victim company, the RSD 25,445,520 (approximately USD 216,914) was transferred from Foxprom's account to Pavlović's personal account and others.

5.      Pavlović has claimed that he had a business collaboration with Montachem and that he arranged for the delivery of 460 or 480 metric tons of linear low-density polyethylene. Pavlović claimed that he made an advance payment in the amount of USD 50,000 from Company #1 to Montachem. In support of this claim, Pavlović provided a purported email from TD Bank, N.A. indicating that in May 13, 2022, approximately USD 53,043 was transferred from Company #1's TD Bank, N.A. account number xxxxxx5345, located in the United States, to Montachem. Pavlović also provided an email purportedly from Montachem stating that Montachem had received payment in full from Pavlović.

6.      Serbian authorities seek to clarify whether Pavlović did, in fact, order linear low-density polyethylene in furtherance of satisfying the victim company's order. To that end, Serbian authorities seek to gain a better understanding of the relationship between Pavlović and Montachem, and to compel Montachem to provide business records about this transaction and to provide a representative for an interview.

7.      To further the investigation, Serbian authorities have asked U.S. authorities to provide bank records pertaining to TD Bank, N.A. account number xxxxxx5345, located in the United States, to provide business records pertaining to Montachem's sale of linear low-density

polyethylene to Pavlović, and to compel a representative of Montachem, located in the United States, to submit to an interview.

## LEGAL BACKGROUND

8.  A treaty[1] constitutes the law of the land.  U.S. Const. art. VI, cl. 2.  The provisions of a treaty have equal footing with acts of Congress and are binding on the courts.  See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001).  The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it."  United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted).  To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute.  Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).  A multilateral convention is a treaty under U.S. law.

9.  When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512.  This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

> \*             \*             \*

> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

\*                              \*                              \*

> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

10. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

11. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request and executes the request itself or delegates execution to another attorney for the government.[4] Upon

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA . . . . Such authorization occurs when an

such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1) -- (b)(1). In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence. 18 U.S.C. § 3512(a)(1).

12. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents. The appointed person has the authority: (1) to issue an order requiring a person to appear and/or to produce documents or other things; (2) to administer any necessary oaths; and (3) to take testimony or statements and to receive documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or to produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

## REQUEST FOR ORDER

13. The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is

---

attorney for the government, or his or her office, receives the referral of the request for execution from OIA." Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," the Ministry of Justice in Serbia and seeks assistance in the prosecution of fraud – a criminal offense in Serbia. The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank and business records, and a witness interview, falls squarely within that contemplated by Section 3512 and the Convention. Finally, this application was properly filed in the District of Columbia.

14. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

15. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Convention authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner's subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable convention likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to

collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner's subpoena.

16. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Michael E. Eaton, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: _____
Michael E. Eaton
Trial Attorney
CT Bar Number 418893
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 616-2706
Michael.E.Eaton@usdoj.gov